### JIMESON v. PIERCE et al.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1902.)

1. INDIANS—ACQUISITION OF LANDS—DOWER.
    Under the Indian law (Laws 1892, c. 679, § 7), providing that an Indian on the C. reservation may acquire the title in fee to lands thereon, and that such lands may be partitioned among his heirs at his death, his widow has dower rights therein.

2. SAME—JUDGMENT OF PEACEMAKERS' COURT—ENFORCEMENT.
    Under the Indian law (Laws 1892, c. 679, § 53), as amended by Laws 1893, c. 229, and Laws 1900, c. 253, providing for enforcement of judgments of the peacemakers' courts by an action in a justice's court, or, if the action is not one within a justice's jurisdiction, the application may be made to a court having jurisdiction of actions of the same nature, an action will lie in the supreme court to enable a widow of an Indian to obtain possession of a distinct parcel of land set off to her as dower by a peacemakers' court.

3. SAME—RIGHT TO LANDS—STATE LEGISLATION.
    The legislature may authorize Indians to acquire rights in state lands, and authorize them to bring actions in the courts to enforce their rights.

4. RETROACTIVE LAW—REMEDY.
    As the amendment of Laws 1900, c. 253, to the Indian law (Laws 1892, c. 679, § 53), gives only a remedy for enforcement of judgments of the peacemakers' courts, the objection that it is retroactive is not available.

Appeal from special term, Erie county.

Action by Emeline Jimeson against Ira Pierce and others. From an interlocutory judgment overruling a demurrer to the complaint, and from an order directing such judgment, defendants appeal. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Ansley & Spencer, for appellants.

Leroy Andrus, for respondent.

WILLIAMS, J. The judgment and order should be affirmed, with costs, with leave to plead over.

The action was brought to recover possession of real property on the Cattaraugus Indian reservation, Erie county, and to enforce a judgment of the peacemakers' court of said reservation. The complaint alleges that all the parties are Seneca Indians; that the plaintiff is the widow of Thomas Jimeson, deceased, and 64 years of age; that said deceased was a Seneca Indian, and died on said reservation September 16, 1890; that he left, him surviving, besides his widow, the following children: Adelaide Pierce, Anthony Jimeson, Orvel Armstrong, Page Jimeson, Eli Jimeson, Israel Jimeson, Julia Jimeson, Thomas Jimeson, Jr., and Hattie Jimeson, all of full age; that deceased at his death was the owner and in possession of a farm on the reservation, of 103.74 acres, which had been allotted, apportioned, and set apart to him, and fenced, cultivated, and improved by him for 35 years, and the plaintiff had shared in the work and labor of such cultivation and improvement; that the improvements on the farm included a house, barn, granary, and other buildings, besides fences, orchards, meadows, and cultivated fields; that after the death of deceased, and before May 19, 1895, proceedings were duly begun in the peacemakers' court for the partition of such farm and the assignment of the widow's dower, such court having full jurisdiction in the proceedings; that commissioners were appointed by that court to make such partition and set off the widow's dower, and that the report, judgment, award, and partition of such commissioners became and was the judgment of the peacemakers' court, which was duly entered July 11, 1895, and that such judgment assigned and set off to the widow (this plaintiff), and awarded to her the right of possession of, real property described in the complaint, containing 9.90 acres, with the appurtenances, including the dwelling house, granary, hog and chicken houses, orchard and shade trees, on the premises; that the marshal of the Seneca Indians for the Cattaraugus reservation was directed by the judgment to put plaintiff in possession of the property so set off to her; that during the pendency of the proceedings in partition the defendants Adelaide Pierce, a daughter of the deceased, her husband, Ira, and their son Gideon, took possession of the property so set off to the plaintiff, and declared their intention, notwithstanding such judgment, to hold the same by force, if necessary, and have done so, and now wrongfully keep possession thereof, and have at all times excluded this plaintiff therefrom; that the judgment was delivered to the marshal, and June 5, 1895,

he attempted to execute the same and to place this plaintiff in possession of the property, but the defendants resisted him and his posse with force and firearms, and compelled them to retire for fear of their lives; that the defendants threaten to kill the marshal if he further attempts to execute the judgment, and the marshal, fearing that his life may be taken, refuses to execute the judgment, and the defendants continue to occupy the premises and keep the plaintiff out of the possession thereof. These are the facts alleged upon which the plaintiff asks the relief that the judgment may be enforced, and that she may recover possession of the real property described in the complaint. The defendants state for their grounds of demurrer that this court has not jurisdiction of their persons, nor of the subject of the action; that the plaintiff has not legal capacity to sue, because she is a Seneca Indian, and the defendants are also, and the controversy involves the title to real property on the Cattaraugus reservation, and damages for withholding the same, and the peacemakers' court has exclusive jurisdiction of all controversies between Seneca Indians involving titles to lands on such reservation, and the complaint does not state facts sufficient to constitute a cause of action.

Assuming that the legislature of this state had power to do so, it apparently did provide that an Indian upon the Cattaraugus reservation could acquire and hold in severalty and fee simple lands upon such reservation, according to the laws of the state, and that such lands might be partitioned among his heirs at his death. Indian law (Laws 1892, c. 679, § 7). The complaint alleges that plaintiff's husband was at the time of his death the owner of the farm in question. The complaint further alleges that after his death the farm was partitioned by proceedings in the peacemakers' court, and in such proceedings the dower of the widow, the plaintiff, was set off to her. The Indian law passed in 1892, as amended in 1893 (chapter 229), by section 47 provided for the peacemakers' court for the Seneca Indians, a part of whom were on the Cattaraugus reservation, and, among other things, gave them "exclusive jurisdiction * * * to hear and determine all questions and actions between individual Indians residing thereon involving title to real estate on such reservation." This is the only language which can be regarded as giving these courts jurisdiction to partition real estate among the heirs of a deceased Indian. It very likely is sufficiently broad to cover such a proceeding. The language of section 7 of the Indian law, which provided for the partition of real estate among the heirs of a deceased Indian, very likely covers the rights of the widow, as well as the children, although only the word "heirs" is used. If the Indian during his lifetime holds the lands in fee simple according to the laws of the state, and the interests of his children therein after his death are governed by the laws of the state as to descent, we see no reason why the same law as to the rights of a widow should not apply also. Section 48 of the Indian law provided for the records of the judgments of the peacemakers' courts, and then section 53 of the original law, as amended in 1893, and finally in 1900, by chapter 253, provided for the enforcement of judgments of those courts. This sec-

tion, as enacted in the original law of 1892, provided merely for the enforcement of judgments by process to be issued; and section 54 provided that the process should be executed by the marshal, having the powers of a constable and of a sheriff. But as amended in 1893 (section 53) it provided for such enforcement by an action in justice's court, ·making a copy of the judgment of the peacemakers' court, certified by its clerk, conclusive evidence of the right of recovery, and the·amount thereof, and by execution upon the justice's court judgment in the usual form, and subjecting the Indian's person and property to such execution. The section as amended in 1893 took away all right to issue process to the marshal to enforce the judgment of the peacemakers' court, and all power of the marshal to execute such process, and provided only for such enforcement of judgments as could be had in justices' courts, within their jurisdiction as to amount and the nature of the claim. In 1900 the following clause was added at the end of the section as amended in 1893: "In case the action or proceeding is one not within the jurisdiction of justices' courts, the application may be made to a court having jurisdiction of actions of the same nature." This is the language which the plaintiff relies upon as entitling her to maintain the present action, and seems to cover the case. Under Code, § 1558, in an action in the supreme court, where actual partition has been made, the final judgment provides that the parties entitled to the possession of the several distinct parcels shall be let into the possession thereof. Section 1613 provides for the final judgment in an action for dower, where a distinct parcel has been set off for the widow, —that it shall award to her possession thereof during her natural life. After such final judgment in either action the widow has her remedy by writ of assistance or by action of ejectment to secure possession, if it is still denied her. Wilbor v. Danolds, 59· N. Y. 657; Thomas, Mortg. 371 et seq.

If the legislature had power to pass these statutes, we see no reason why the complaint does not allege a good cause of action. Under the statutes referred to, the supreme court has jurisdiction of the persons of the parties, the plaintiff has legal capacity to maintain the action, and the complaint fairly states facts constituting a cause of action; and the grounds of the demurrer are not, therefore, well taken. The scheme of the statutes is apparent, and the plaintiff brings herself within the terms thereof. We are not prepared to say that the legislature had not the power to provide for the Indians upon this reservation the remedies for the protection of their rights embodied in these statutes. These Indians are regarded as wards of the state, and possess such rights to appear and litigate in courts of justice as are conferred upon them by statute. Johnson v. Railroad Co., 162 N. Y. 468, 56 N. E. 992. For many years the legislature has passed laws for the protection of the rights and property of these Indians, and the enforcement of such rights under the laws so passed. We see no reason why such laws should not be regarded as valid, and should not be enforced. .While it has been frequently held that Indians cannot come into our courts and bring actions in the absence of acts of the legislature enabling them to do so, yet it has

always been held that they can do so under enabling acts when they have been passed. Seneca Nation v. Christeè, 126 N. Y. 147, 27 N. E. 275; Johnson v. Railroad Co., 162 N. Y. 468, 56 N. E. 992. If it is said that the legislature had no power to provide for the acquiring by an individual Indian of a title in fee to lands upon this reservation, inasmuch as their rights in and to such lands are rights of occupation, merely, the reply is that the state is the owner in fee of the lands, as held by the cases herein before referred to, and the state has power to release its title to the individual Indians, and to provide that such Indians may acquire a title in fee therein according to the laws of the state.

We think the allegations of the complaint are sufficient upon demurrer. Upon the trial of the action, the facts with reference to the acquiring of the title in fee by the deceased, and the partition thereof after his death, will have to be proved, in order to maintain the action. The act of 1900 relates to remedies, merely, and is not open to the objection that it is retroactive. In re Davis' Estate, 149 N. Y. 545, 44 N. E. 185.

The views hereinbefore expressed lead us to conclude that the demurrer was properly overruled by the trial court, and that the judgment and order appealed from should be affirmed. The defendants should have leave to plead over upon payment of costs of the demurrer and of this appeal within 20 days after service of a copy of this decision. All concur, except DAVY, J., not voting.